1

2

3

4

5

6           **UNITED STATES DISTRICT COURT**
                   **DISTRICT OF NEVADA**
7

8    JANELLE DIETRICH,                    )        3:04-CV-0468-BES (VPC)
                                          )
9           Plaintiff,                    )
                                          )
10          vs.                           )        **ORDER**
                                          )
11   JOHN ASCUAGA'S NUGGET, et al.,       )
                                          )
12          Defendants.                   )
     _____)
13

14          Before the court is the motion of defendants, Sparks Nugget, Inc., Michelle Malchow, and Larry

15   Harvey ("Nugget defendants") for attorney's fees pursuant to 28 [sic] U.S.C. § 1983, NRS 17.115, NRS

16   18.010, NRS 357.180 and NRS 7.085; and request for additional time (#55).[1]  Plaintiff opposed (#65)

17   and the Nugget defendants replied (#71).  The District Court referred this motion to the undersigned

     Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) (#69).
18

19          This court ordered the parties to file supplemental points and authorities concerning whether the

20   Nugget defendants are entitled to attorney's fees pursuant to Fed.R.Civ.P. 54(d) and Local Rule 54-16

     (#75).  Nugget defendants did so (#76), but plaintiff did not.[2]
21

22

23   _____

24          [1]Due to confusion with the new electronic filing system implemented in this Court, the Nugget
     defendants mistakenly made a one-day error in their computation of the deadline to file the motion for
     attorney's fees (#55).  *See* affidavit of Stephen S. Kent, attached as Ex. A.  Plaintiff did not oppose;
25   therefore, the Nugget defendants' motion for additional time (#55) was granted (#75).

26          [2]The court ordered plaintiff to file her supplemental points and authorities no later than April
     30, 2007, but she failed to do so (#76).  Instead, on May 23, 2007, the day before the hearing on this
27   motion, plaintiff simultaneously moved to enlarge the time to file her supplemental points and
     authorities (#80), and also filed the points and authorities (#79).  This court denied the motion to enlarge
28   (#80) as untimely and did not consider plaintiff's supplemental points and authorities (#81).  The court
     subsequently ordered stricken the supplemental points and authorities (#82).

1     Having considered the parties' papers, the court set a hearing on the Nugget defendants' motion

2  and ordered plaintiff to be present at the hearing (#s77 & 78).  The court heard oral arguments of counsel

3  on May 24, 2007, and plaintiff also appeared to answer this court's questions (#81; *see also* Transcript

4  of hearing (#84)).

5     Subsequent to the hearing, the court issued an order directing plaintiff's counsel, Martin

6  Crowley, Esq. ("Mr. Crowley"),  to file points and authorities concerning whether sanctions should be

7  imposed against him pursuant to 28 U.S.C. § 1927 and the court's inherent authority (#85).  Mr. Crowley

8  responded (#86).

9     The court has thoroughly reviewed the record, and for the reasons set forth herein, this court

10  orders that Nugget defendants' motion (#55) is granted as to the plaintiff, and also orders that sanctions

11  be imposed upon Mr. Crowley.

12     **I.**     **<u>Procedural History</u>**

13        **A.**     **Plaintiff's Claims for Relief**

14     This action arises out of plaintiff's activities as a volunteer for the Citizens for the Right to Vote

15  ("CRV") during the annual Best in the West Rib Cook-Off in August 2002.  Two incidents occurred

16  during the Rib Cook-Off which are the basis for plaintiff's claims (#4). The first incident occurred on

17  August 29, 2002, when plaintiff and other CRV volunteers set up a table on the public sidewalk at

18  Victorian Avenue and 14th Streets to register voters and to gather signatures for a recall petition against

19  members of the Reno City Council. *Id.*  Plaintiff alleged that defendant, Michelle Malchow, a Nugget

20  employee, asked the group to vacate the sidewalk, since the Nugget had obtained a permit to use the area

21  for the Rib Cook-Off.  *Id.*  When plaintiff and the other CRV volunteers refused, Malchow summoned

22  the police, and the volunteers, including plaintiff, were moved to another location.  *Id.*  The CRV

23  volunteers remained at the new location throughout the ensuing two days of the Rib Cook-Off, where

24  they continued their efforts without interference or incident (#65, Exhibit A, deposition of Janelle

25  Dietrich, pp. 73, lines 19-25; 74:1-3).  It is undisputed that the Nugget secured the necessary permits to

26  host this event (#24, Ex. A).

27

28                           2

1    The second incident occurred on August 31, 2002, when plaintiff arrived for the day at the

2    designated location with her truck (#4).  Plaintiff wanted to unload signs, tables, and chairs to set up for

3    the day, but a police barricade, stating "Road Closed," prevented her from driving directly to the site.

4    *Id.*  Plaintiff alleged that a police officer moved the barricade for her after she explained she wanted to

5    unload her truck, but as she waited for another CRV volunteer to assist her, two other police officers and

6    defendant Malchow approached her to ask why she had disregarded the "Road Closed" sign.  *Id.*  One

7    of the police officers issued plaintiff a citation for failing to obey a traffic device, plaintiff waited until

8    other volunteers arrived to unload her truck, and she then drove her vehicle out of the closed area.  *Id.*

9    Plaintiff later contested the traffic citation in Sparks Municpal Court, and the judge found her guilty of

10   the offense.  *Id.*  The state district court affirmed plaintiff's conviction on appeal.  *Id.*

11   Plaintiff sued the Nugget, two Nugget employees – Michelle Malchow and Larry Harvey – as

12   well as the City of Sparks, the Sparks Police Department, and police officer Cardella pursuant to 42

13   U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.  *Id.*  Plaintiff alleged that defendants engaged in a civil

14   conspiracy to violate her constitutional rights and that they also violated her First, Fourth, Fifth and

15   Fourteenth Amendment rights.[3]  *Id.*  Plaintiff sought damages in excess of one million dollars

16   ($1,000,000.00) for each claim and for punitive damages.  *Id.*

### B.    Plaintiff's Deposition Testimony

18    At her May 24, 2005 deposition, plaintiff testified about the alleged violations of her

19   constitutional rights. *See* plaintiff's opposition to motion for attorney's fees (#65, Ex. A).  Plaintiff

20   testified that on August 29, 2002, defendant Malchow asked CRV volunteers to relocate their table and

21   then telephoned the police when they refused to do so. *Id.* at 38:15-25; 39:1-25.  Plaintiff did not hear

22   the entire conversation between defendant Malchow and another CRV volunteer concerning why the

23   group was being asked to move to another location. *Id.* at 40:1-25; 41:1-21.  After the police officers

24   arrived, they advised plaintiff and the other CRV volunteers to leave or be arrested. *Id.* at 46:8-25.

25   Sparks Police escorted the CRV volunteers and plaintiff  to a different location, where they resumed

---

27    [3]Plaintiff also alleged supplemental state law claims which are not germane to this order.

1   their activities.  It is undisputed that none of the defendants ever prevented the CRV volunteers from

2   gathering signatures. *Id.* at 48:2-25; 49:1-3; 51:16-25; 52:1. Plaintiff testified that she was able to collect

3   signatures for the recall petition and register people to vote during the  Rib Cook-Off without incident.

4   *Id.* at 73:11-25;  74:1-13.  Plaintiff had no knowledge whether any other groups circulating petitions had

5   any greater access or privileges than the CRV volunteers.  *Id.* at 81:7-15.

6         On August 31, 2002, plaintiff was cited for failing to obey a traffic citation, but she was not

7   handcuffed or taken into custody.  *Id.* at 83:6-10.  Shortly after being cited, plaintiff resumed her work

8   collecting petition signatures for the balance of the day. *Id.* at 74:2-13.

9         Plaintiff also testified concerning her allegation that Sparks personnel conspired with the Nugget

10  defendants to violate her constitutional rights.  Plaintiff testified that someone told her that the Nugget

11  pays part of the police officers' wages during the Rib Cook-Off, and she also believed that the Nugget

12  is probably the largest taxpayer in the City of Sparks. *Id.* at 99: 23-25; 100:1-25; 103:7-25; 104:1-24.[4]

13  The day after the CRV volunteers were relocated with the assistance of Sparks Police, plaintiff spoke

14  with Nugget defendant Harvey on telephone. Plaintiff testified that defendant Harvey told her CRV

15  could set up tables "where you want," and defendant Harvey advised that he wanted to insure that safety

16  concerns were addressed.*Id.* at 67:18-25; 68:1-6.  Plaintiff testified that defendant Harvey was very nice,

17  that he was aware of the problem that had arisen the prior evening, that it had been resolved, and not to

18  be concerned, as long as safety issues were addressed. *Id.* at 68:11-18.

19        The  only  other  arguable  evidence  of  the  alleged  civil  conspiracy  to  violate  plaintiff's

20  constitutional rights concerns the issuance of the traffic citation to plaintiff on August 31, 2002.  Plaintiff

21  testified that with the permission of Sparks Police officers, she drove her truck past a barricade to pick

22  up CRV tables and chairs; however, two or three additional Sparks police officers arrived at the scene

23  with defendant Malchow.  *Id.* at 69:14-25; 70:1-25; 71:1-19.  Plaintiff testified that after she admitted

24  _____

25        [4]The Nugget defendants attached only excerpts of the transcript of plaintiff's deposition to their
    motion for summary judgment (#24).  In addition, the Nugget defendants attached excerpts of the trial
26  transcript of the December 3, 2002 trial in Sparks Municipal Court. It is difficult to rely on partial
    excerpts of records; therefore, the court relies on the complete deposition transcript attached to plaintiff's
27  response to motion for attorney's fees (#65).

28                                                         4

1    having driven her car past the barricade and provided her driver's license, defendant Malchow asked the

2    officers to issue a citation. *Id.* at 71:11-25; 72:1-9.   Plaintiff testified that defendant Malchow's

3    statement to the police officers is evidence of a conspiracy, especially in light of the unflattering

4    newspaper article published the day before this incident. *Id.* at 106:13-17.

5         When questioned about her December 3, 2002 trial before the Sparks Municipal Court

6    concerning her traffic citation, plaintiff recalled that the arresting officer testified that it was his decision

7    alone to issue plaintiff a citation and that Nugget defendant Malchow had nothing to do with his decision

8    *Id.* at 111:11-25; 112:1-10.   Plaintiff also confirmed that defendant Malchow testified that she did not

9    encourage or advise the officer to issue plaintiff a citation. *Id.* at 112:11-14.

10              **C.     The Nugget Defendants' Motion for Summary Judgment**

11        At the conclusion of discovery, the Nugget defendants filed their motion for summary judgment

12   (#24).  Plaintiff opposed (#44) and the Nugget defendants replied (#48).  On September 27, 2006, the

13   District Court granted summary judgment in favor of the Nugget defendants on the federal constitutional

14   claims and dismissed without prejudice the plaintiff's supplemental state law claims (#51).  In its order,

15   the District Court reviewed private party liability under 42 U.S.C. § 1983, which provides that private

16   parties may only be liable under Section 1983 if they willfully conspire or participate in joint action with

17   state officials to deprive others of their constitutional rights. *Id.*  To overcome summary judgment, the

18   plaintiff must prove a conspiracy between state actors and private individuals – in this case, the Sparks

19   defendants and the Nugget defendants. *Id.*  The District Court noted that "to be liable as a co-conspirator,

20   the private defendant must share with the public entity the goal of violating a plaintiff's constitutional

21   rights." *Id.* (citations omitted).

22        The District Court  concluded that plaintiff failed as a matter of law to satisfy the joint action test

23   for private party liability under § 1983, and stated:

24              Plaintiff alleges that Defendant Malchow complained about plaintiff's
              presence on the sidewalk during the Rib Cook-Off to a Sparks police
25              officer and requested police assistance when Plaintiff allegedly drove past
              barricades. However, Malchow's alleged conduct does not, without more,
26              constitute state action for which the Nugget Defendants can be held
              responsible. (citations omitted). Because plaintiff has failed to offer
27              evidence to support any concerted action between the Nugget Defendants

28                                                    5

1

2

and the Sparks police, the Nugget Defendants are entitled to summary judgment on plaintiff's § 1983 claim.

*Id.* at pages 5-6.

3

4

5

6

7

8

9

10

11

12

13

The District Court next considered plaintiff's first claim for relief alleging a civil conspiracy to "cite Plaintiff under false pretenses under color of law and violate her Constitutional rights . . . in retaliation for Plaintiff asserting her rights under the Constitution and for the public embarrassment of defendants through the article that appeared in the Sparks Tribune" (#4, para. 21). The District Court initially noted that plaintiff failed to identify the exact nature of her conspiracy claims, and the court found that "[p]laintiff cannot sustain her § 1985 conspiracy claim against the Nugget Defendants because she is unable to sustain a § 1983 claim against these Defendants based upon the same facts" (#51 at p. 6). The District Court further noted that "to the extent any of Plaintiff's claims against the Nugget Defendants are brought under 42 U.S.C. § 1986, these claims are also dismissed." *Id.* at p. 6, n. 4 (citations omitted).

14

15

16

17

On September 28, 2006, judgment was entered in favor of the Nugget defendants and against plaintiff (#52), and on October 12, 2006, the Nugget defendants filed a bill of costs in the amount of $2,682.26 (#54). The following day, the Nugget defendants filed their motion for attorney's fees (#55), which is now before this court.

18

**D.    May 24, 2007 Hearing and July 9, 2007 Order**

19

20

21

22

23

24

25

26

27

The court held a hearing on the Nugget defendants' motion for attorney's fees on May 24, 2007 and also ordered the parties to file supplemental points and authorities pursuant to Fed.R.Civ.P. 54(d) and LR 54-16. Plaintiff and her counsel were both present at that hearing. Given the financial consequences at stake in the event this court granted the Nugget defendants' motion, the court believed it important to hear from the plaintiff and Mr. Crowley. Mr. Crowley told the court that he understood that filing a civil rights complaint later deemed to be without merit or frivolous could result in an award of attorney's fees against the plaintiff (#84, transcript of May 24, 2007 hearing, p. 27, lines 15-18.) Mr. Crowley stated that he communicated this possibility to his client and that he does this every time he files a civil rights lawsuit. *Id.* at 27:18-25; 28:1-14. The court then inquired of plaintiff:

28

6

| | | |
|---|---|---|
| The Court: | | Is it correct, Ms. Dietrich, that you understood that if this civil rights case was found to – by a court to be without merit, or frivolous, that you personally might be required to pay the attorney's fees that the other side incurred? Did you understand that? |
| Ms. Dietrich: | | I understood that, but the thing is I felt I was right and that that would never happen. |

*Id.* at 28:17-23.

Apart from these admissions, Mr. Crowley made the following statement:

> Mr. Kent is standing here saying [this lawsuit] is frivolous because they moved her a couple of blocks away. So her lawsuit is frivolous. Let me tell you, I am going to file a lawsuit if someone does that to me. If I'm standing out on a corner here by my office and he tells me I can't stand there, and he forces me under the threat of arrest to move, I'm going to file a lawsuit. It's a public sidewalk.

> You have to stand up to tyranny, and if Americans can't do that, then we'll have tyranny in this country. And our founding fathers said so, and we have to continue to repel it. They saw the future. They lived in those times. They knew what it was like to live under tyranny.

> And it doesn't matter what the cops think they can do or not do, if we don't tell them you can't do this, we have rights, then they'll keep doing it to everyone.

*Id.* at 31:25; 32:1-15.  Based upon these and other statements Mr. Crowley made at the hearing, as well as the record in this action, the court issued its order advising Mr. Crowley that the court would consider whether sanctions should be awarded against Mr. Crowley pursuant to the court's inherent authority to sanction attorneys who appear before it, as well as 28 U.S.C. § 1927 (#85).

## II.  Discussion and Analysis

### A.  Sanctions Against the Plaintiff Pursuant to 42 U.S.C. § 1988

"A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil rights defendant if the plaintiff's action was 'unreasonable, frivolous, meritless, or vexatious.'" *Galen v. County of Los Angeles,* 477 F.3d 652, 666 (9th Cir. 2007) (citing *Vernon v. City of Los Angeles,* 27 F.3d 1385, 1402 (9th Cir. 1994) (internal quotation marks omitted).  In *Christianberg Garment Co. v. EEOC,* 434 U.S. 412, 422 (1978), the Supreme Court held that an action becomes frivolous when the

7

result appears obvious or arguments are wholly without merit, and a defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at the inception. *See also Galen, supra,* at 666.

Plaintiff's deposition testimony plainly reveals that she lacked any direct evidence that the Nugget defendants willfully conspired or participated in joint action with the Sparks defendants to deprive plaintiff of her constitutional rights. Plaintiff had no evidence of an agreement or a meeting of the minds to violate her rights; moreover, there is no evidence that the Nugget defendants shared with the Sparks defendants the goal of violating her constitutional rights.  In fact, plaintiff admitted in her deposition that she was not prevented from engaging in registering voters or soliciting signatures for the CRV petition. #65, Ex. A at 51:4-21.  For these reasons, the District Court granted summary judgment in favor of the Nugget defendants on plaintiff's civil conspiracy and constitutional claims.

That plaintiff lost at summary judgment does not render her case *per se* frivolous, *Galen,* 477 F.3d 652 at 667, and the court must consider whether the relevant law was clearly established for a case to be considered wholly without merit. *See Taylor AG Industries v. Pure-Gro,* 54 F.3d 555, 563 (9th Cir. 1995).  In this instance, the relevant authority had been clearly established in the Ninth Circuit concerning private part liability under Section 1983. *Franklin v. Fox,* 312 F.3d 423, 441 (9th Cir. 2002) (citing *Radcliffe v. Rainbow Constr. Co.,* 254 F.3d 772, 783 (9th Cir. 2001), *cert. denied,* 534 U.S. 1020 (2001) (a conspiracy between private and state actors may be established by showing "an agreement or 'meeting of the minds' to violate constitutional rights.").  In *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540 (9th Cir. 1989), the court held that to be liable as a co-conspirator, the private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights. Finally, in *Collins v. Womancare,* 878 F.2d 1145, 1155 (9th Cir. 1989), the court noted that there must be a substantial degree of cooperation before imposing private liability on private parties for acting jointly with state actions in a § 1983 action, and held that "merely complaining to the police does not convert a private party into a state actor."

This court concludes that the law on private party liability under § 1983 was clearly established at the time of plaintiff's claim.  Based upon plaintiff's own deposition testimony, it was obvious that

8

1    plaintiff could not meet her burden of demonstrating that the Nugget defendants engaged in a civil

2    conspiracy with the Sparks defendants to violate plaintiff's constitutional rights. The court finds

3    plaintiff's claims against the Nugget defendants were meritless and frivolous, and they are entitled to

4    recover attorney's fees pursuant to 42 U.S.C. § 1988.

5          In addition to the civil conspiracy claim, plaintiff also alleged the Nugget defendants violated

6    her First, Fourth, Fifth and Fourteenth Amendment rights, yet the law concerning these constitutional

7    claims was also clearly established at the time plaintiff filed her complaint.  With respect to the First

8    Amendment claim, it is undisputed that the Nugget obtained the necessary permits to exclusively use

9    and occupy the public streets and sidewalks for the Rib Cook-Off, which resulted in a lawful

10   privatization of the area. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,* 515 U.S.

11   557 (1995); *Sistrunk v. City of Strongville,* 99 F.3d 194 (6ᵗʰ Cir. 1996) *cert. denied,* 520 U.S. 1251

12   (1997). The Nugget had the right to regulate those persons coming into the area for the duration of the

13   Rib Cook-Off, but nevertheless accommodated plaintiff and the CRV volunteers by relocating them to

14   a different location where they solicited signatures for their petition without any further interference.

15   There was no basis under the law or the facts to support plaintiff's First Amendment claim.

16         Plaintiff's Fourth, Fifth and Fourteenth Amendment claims also lack legal or factual support.

17   Although plaintiff was issued a citation for failure to obey a traffic device, she was not handcuffed,

18   detained or taken into custody.  A traffic citation is only a "promise to appear" and is not a seizure under

19   the Fourth Amendment.  *Karam v. City of Burbank,* 352 F.3d 1188, 1194 (9ᵗʰ Cir. 2003).  Plaintiff

20   received a citation, and she only alleged a threatened arrest when she and others refused to relocate.

21   These facts do not state a Fourth Amendment claim.

22         Plaintiff's Fifth Amendment claim is even more puzzling.  This claim appears to be an effort to

23   collaterally attack plaintiff's conviction in Sparks Municipal Court, despite the fact that the conviction

24   has never been reversed or otherwise challenged. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). The

25   Fourteenth Amendment claim suffers from the same infirmities – an absence of law and facts.  To the

26   extent plaintiff attempted to allege an equal protection claim, she had no facts to support it.  Plaintiff has

27

28                                                    9

1    "no idea" whether other groups similar to the CRV volunteers enjoyed greater privileges or access to the

2    Rib Cook-Off. (#65, Ex. A at 81:13-15).

3        The court concludes that plaintiff's amended complaint was meritless and frivolous. If plaintiff

4    had any doubts about her claims, her deposition certainly put her on notice that her claims were

5    meritless.

6        The court is keenly aware that an award of attorney's fees under Section 1988 results in an award

7    against the plaintiff individually. The court held the May 24, 2007 hearing to determine whether the

8    plaintiff fully understood prior to filing her complaint that if her case was deemed frivolous, she faced

9    potential personal liability for the defendants' attorney's fees. Plaintiff stated that she knew and

10    understood this. Therefore, the court grants the Nugget defendants' motion, and now turns to the

11    question whether Mr. Crowley, plaintiff's attorney, should also shoulder a portion of the financial

12    consequences of filing this action.

13              **B.      Sanctions Pursuant to the Court's Inherent Authority**

14        The federal court has inherent power to levy sanctions, including attorney's fees, for "willful

15    disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly,

16    or for oppressive reasons. . . ." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766 (1980). In *Chambers*

17    *v. NASCO, Inc.,* 501 U.S. 32, 46 (1991), the Court reaffirmed the *Roadway* principles and "left no

18    question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously or

19    wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the

20    litigation for an improper purpose." *Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir. 2001) (citing *Chambers,*

21    501 U.S. at 45-46, n.10). In *Fink,* the Ninth Circuit made clear that imposition of sanctions under a

22    court's inherent power requires a finding of bad faith or "conduct tantamount to bad faith:"

23             Sanctions are available for a variety of types of willful actions, including
recklessness when combined with an additional factor such as

24             frivolousness, harassment, or an improper purpose. . . .An attorney's
reckless misstatements of law or fact, when coupled with an improper

25             purpose, such as an attempt to influence or manipulate proceedings in a
case in order to gain a tactical advantage in another case, are sanctionable

26             under a court's inherent power.

27

28                                             10

1    *Id.* at 994.  This court has thoroughly reviewed the record in this proceeding and concludes that Mr.

2    Crowley acted in bad faith in bringing this action and in maintaining this action.

3         The court begins with plaintiff's amended complaint (#4).  Mr. Crowley, on behalf of the

4    plaintiff, alleged a civil conspiracy between state actors – the City of Sparks and the Sparks Police

5    Department – and the Nugget to violate the plaintiff's constitutional rights.  In granting summary

6    judgment in favor of the Nugget defendants, the District Court noted, "The Ninth Circuit requires a

7    *substantial degree* of cooperative action before imposing liability on private parties for acting jointly

8    with state actors in a § 1983 action" (#51) (citations omitted and emphasis supplied).  Here, the

9    conspiracy to deprive plaintiff of her constitutional rights consisted of two incidents.  First, defendant

10   Malchow requested that Sparks Police officers intervene when the CRV volunteers refused to relocate

11   the area designated under the Nugget's special use permit for the Rib Cook-Off.  Second, plaintiff

12   ignored a "Road Closed" sign and drove her truck into a prohibited area, which resulted in the issuance

13   of a traffic citation after defendant Malchow reported this to police officers.  Had Mr. Crowley reviewed

14   the cases outlined in the Court's order granting summary judgment, he should have understood that the

15   law did not support these facts.

16        Mr. Crowley acknowledged in the amended complaint that he understood the Nugget had

17   obtained a special use permit to host the Rib Cook-Off, but asserted that there is no basis in the law that

18   public streets and sidewalks can be privatized for limited purposes and limited periods of time (#4, para.

19   15).  In fact, Mr. Crowley states in the complaint, "This view, however, is not supported by any authority

20   of Federal or State Law and is clearly contrary to the First Amendment and the judicial interpretations

21   thereof."  *Id.*  Had Mr. Crowley read the case authority concerning the privatization of city streets and

22   sidewalks for limited private special events, he should have understood that this is indeed a permissible

23   government function.  True, Mr. Crowley's view remained unchanged, notwithstanding the facts and

24   the law, given his remarks at the May 24, 2007 sanctions hearing.  However, Mr. Crowley's fundamental

25   misunderstanding of the law is no excuse for his recklessness in continuing to assert meritless positions

26   and in requiring the Nugget defendants to expend substantial time and money to defend against this

27   frivolous claim.

28

1    Mr. Crowley also alleged violations of the Fourth, Fifth, and Fourteenth Amendments on behalf

2    of the plaintiff that were equally specious and without any basis under the law or facts.  There are no

3    facts that remotely support an allegation that the plaintiff was falsely arrested,  detained,  handcuffed,

4    or taken into custody in violation of the Fourth Amendment.  Similarly, there are no facts or law to

5    support plaintiff's claim that her Fifth Amendment rights were violated.  Plaintiff's disappointment with

6    her conviction in Sparks Municipal Court over her traffic citations due to "numerous hearsay and other

7    evidentiary violations [that] occurred during the trial" or that "much relevant evidence was precluded"

8    does not translate into a violation of her Fifth Amendment rights.  Finally, there is absolutely no basis

9    for an equal protection or due process claim against the Nugget defendants.

10    In the face of the complete lack of legal or factual support for these claims, the plaintiff sued the

11    Nugget defendants – Malchow and Harvey individually – for millions of dollars in damages (#4).  Even

12    assuming, *arguendo,* that Mr. Crowley had a sincere but mistaken belief that the amended complaint

13    was not frivolous, the plaintiff's deposition testimony should have disabused him of that notion.

14    Undeterred, Mr. Crowley opposed the motions for summary judgment filed by both the Nugget

15    defendants and Sparks defendants, which only increased the attorney's fees, and more important, the risk

16    to his client that she might be held responsible for those attorney's fees pursuant to 42 U.S.C. § 1988.

17    Recognizing the potentially severe financial consequences to the plaintiff, who is retired and

18    nearly seventy, the court set the sanctions motion for hearing and ordered the plaintiff to be present.  At

19    that hearing, both Mr. Crowley and the plaintiff acknowledged that they understood the plaintiff might

20    be required to pay opposing counsel's attorney's fees and costs, and Mr. Crowley stated that defense

21    counsel make this threat every time he files a civil rights suit (#84, p. 27:15-18).  What Mr. Crowley

22    went on to state is very telling:

23          Of course. She knows that – when we filed the lawsuit, that if she lost,
             someone would probably be trying to get attorney's fees. It happens in
24          every single case. I've never had a case where anybody lost or was
             dismissed on summary judgment where the other side didn't come after
25          them for attorney's fees, except for in this case there was a split because
             of Sparks city [sic] didn't seek attorney's fees and costs in this case,
26          because I think they decided that's the best way to end the litigation is
             just to be over and done with it.

27

28                                              12

1   *Id.* at 27:24-25; 28:1-5.  It is evident that Mr. Crowley filed this complaint, understood the financial

2   risks to his client, and he assumed that the Nugget defendants would walk away from their attorney's

3   fees because "they decided that's the best way to end the litigation" to "be over and done with it."

4        In this instance, Mr. Crowley's strategy was incorrect.  In the face of a baseless lawsuit that has

5   no support under the facts or the law, Mr. Crowley recklessly disregarded the law and the potential

6   consequences to his client.  The court finds that Mr. Crowley's reckless misstatements of law and fact,

7   and his insistence in proceeding in the face of clear legal and factual authority to the contrary, is

8   tantamount to bad faith and is sanctionable under the court's inherent power.

9                        **C.     Sanctions Pursuant to 28 U.S.C. § 1927**

10       The District Court is authorized to award attorney's fees and costs pursuant to 28 U.S.C. § 1927,

11  which provides, "Any attorney. . . who so multiplies the proceedings in any case unreasonably and

12  vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's

13  fees reasonably incurred because of such conduct."  Sanctions are proper under Section 1927 where "an

14  attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the

15  purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.* 78 F.3d 431, 436 (9th Cir. 1996)

16  (internal quotations omitted).  "[R]ecklessness suffices for § 1927, but bad faith is required for sanctions

17  under the court's inherent power."  *Fink v. Gomez.* 239 F.3d 989, 993 (9th Cir. 2001).

18       For the reasons set forth above, this court finds that Mr. Crowley knowingly and recklessly

19  asserted frivolous claims against the Nugget defendant for the purpose of harassment.  His conduct

20  multiplied these proceedings and was vexatious.  Therefore, the court finds Mr. Crowley's conduct is

21  also sanctionable pursuant to Section 1927, and he shall personally satisfy a portion of the Nugget

22  defendants' attorney's fees.

23                     **D.     Fed.R.Civ.P. 54(d)** – **Attorney's Fees**

24       Fed.R.Civ.P. 54(d) allows the District Court, in its discretion, to award costs to the prevailing

25  party in a lawsuit, unless an express provision regarding costs is made by federal statute or court rule.

26  A prevailing defendant is one who defeats the litigation and obtains a denial of relief.  "'A party in

27  whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs under

28                                              13

1   Rule 54(d).'" *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996) (*quoting d'Hedouville v. Pioneer*

2   *Hotel Co.*, 552 F.2d 886, 896 (9th Cir. 1977)). This court has construed the Nugget defendants' motion

3   as one for attorney's fees pursuant to Fed.R.Civ.P. 54(d)(2) and LR 54-16, and ordered the parties to file

4   supplemental briefs in accordance with LR 54-16 (#75).   The Nugget defendants did so (#76), but

5   plaintiff filed her paper well after the deadline, and only the day before the hearing (#79); therefore, her

6   points and authorities were stricken (#s 81 & 82).   The court now turns to consideration of this motion

7   under 42 U.S.C. § 1988(b) and LR 54-16.

8                          *1)      Civil Rights Attorney's Fee Awards Act and LR 54-16*

9         The Civil Rights Attorneys' Fee Awards Act allows a prevailing party in a civil rights action,

10   including suits brought pursuant to 42 U.S.C. § 1983, to seek reimbursement of attorney's fees, to the

11   extent such fees are reasonable. *See* 42 U.S.C. § 1988(b).  Implicit in the court's analysis of the Nugget

12   defendants' motion for attorney's fees is the recognition that this is a § 1983 action, which requires the

13   court to consider defendants' motion in light of the line of cases analyzing fees sought pursuant to

14   Section 1988(b). In a § 1988(b) fee application, the movant must demonstrate that 1) the claimant is the

15   prevailing party, and 2) the fee request is reasonable. *Hensley v. Echerhart,* 461 U.S. 424, 433 (1983).

16   Since the Nugget defendants obtained summary judgment in this action and judgment has been issued

17   in their favor, there is no dispute that they are prevailing parties .

18         In considering the second factor of reasonableness, "the most useful starting point for

19   determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

20   multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.   In addition, the results obtained are

21   of particular importance where, as here, the Nugget defendants are deemed prevailing, "even though

22   [they] succeeded on only some of [their] claims for relief."   *Id.* at 434. Here, the District Court did not

23   address the substance of plaintiff's supplemental state law claims and dismissed them without prejudice.

24   *Hensley* requires that two additional questions be addressed: "First, did the plaintiff fail to prevail on the

25   claims that were unrelated to the claims on which he succeeded?  Second did the plaintiff achieve a level

26   of success that makes the hours reasonably expended a satisfactory basis for making the fee award? "

27   *Id.*   This court finds that plaintiff's claims were based upon a common core of facts and related legal

28

1   theories, and the fact that the District Court dismissed the supplemental state law claims does not

2   diminish the Nugget defendants' level of success on the constitutional claims. The court further finds

3   that having obtained judgment against the plaintiff on the core constitutional claims, the hours counsel

4   expended to achieve that result were reasonably expended.

5       Calculation of reasonable attorney's fees is a two-step process.  First the court computes the

6   "lodestar" figure, which requires the court to multiply the reasonable hourly rate by the number of hours

7   reasonably expended on the litigation. *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir, 2000).

8   The next step is to decide whether to increase or reduce the lodestar amount based upon the *Kerr* factors

9   not already included in the lodestar calculation. *Id. (citing, Kerr v. Screen Extras Guild, Inc.,* 526 F.2d

10  67 (9th Cir. 1975).  The *Kerr* factors are incorporated into LR 54-16.

11              *1.      Step One*

12      The affidavit of Stephen Kent, Esq. states that hourly rates are $120 and $145[5] for Mr. Kent and

13  Mr. Anderson, and that $90 to $110 is the hourly rate for the paralegal (#s 55, Ex. A & 76, Ex A).  The

14  court finds these hourly rates to be extremely reasonable based upon its own experience of prevailing

15  market rates for legal services in this community.  Pursuant to the billing summary, defendants' counsel

16  expended a total of 152.75 hours, and the paralegal performed 6.40 hours of work  *Id.*   The court has

17  carefully reviewed the billing summary, which identifies the date the work was performed, the attorney

18  or paralegal who performed the legal services, a description of the services, the hours expended on each

19  task, that attorney or paralegal's hourly rate, and the amount charged (#76, Ex. B).  The court finds that

20  the hours expended were reasonable; therefore, attorney's fees are $19,607.50 and paralegal fees are

21  $634.50, for a total of $20,242.00.

22              *2.      Step Two*

23      The next step is to decide whether to increase the lodestar amount based upon the *Kerr* factors

24  not already included in the initial lodestar calculation. *Fischer,* 214 F.3d 1115, 1119.  The court finds

25

26  _____

27      [5]#55, Ex. F indicates the hourly rate for each attorney was $120 for the period of 12-22-04
    through 7-8-05 and the hourly rate for each attorney was $145 for the period of 8-8-05 through 9-29-06.

28                                      15

the following *Kerr* factors are the relevant subsections of LR 54-16(b)(3) in this case:

      (A)     The results obtained and the amount involved;
      (B)     The time and labor required;
      (C)     The novelty and difficulty of the questions involved;
      (D)     The skill requisite to perform the legal services properly; and
      (I)     The experience, reputation, and ability of the attorney(s).

      (A)     <u>The results obtained and the amount involved - LR 54-16(3)(A)</u>

     The Nugget defendants prevailed in this case and obtained a judgment against the plaintiff in a proceeding in which the plaintiff sought a multi-million dollar judgment.  The fact that plaintiff elected to name defendants Malchow and Harvey individually increased the risks to them of an unfavorable judgment.  Prior to filing their motion for summary judgment in August 2005, the Nugget defendants attempted to settle this case several time without requiring the parties to incur more attorney's fees, but plaintiff rejected those settlement overtures.

     The court considers plaintiff's deposition to be a pivotal event in this proceeding.  Plaintiff's deposition testimony made it abundantly clear that plaintiff had no evidence to support her claims, but in the face of the obvious, plaintiff would not settle this case, which is her decision.  However, the consequences of her decision are that judgment has been entered against her, and that this court finds that plaintiff's case was meritless and frivolous. Conversely, the Nugget defendants properly defended the action, attempted settlement, and when that failed, moved for summary judgment, which they obtained.  These factors weigh in favor of defendants.

      (B)     <u>The time and labor required and the novelty and difficulty of the questions involved – LR 54-16(3)(B) and (C)</u>

     Plaintiff filed her complaint on August 30, 2004, and judgment was entered against plaintiff and in favor of the Nugget defendants on September 28, 2006, two years later.  Plaintiff alleged a fairly unusual claim against private parties – a civil conspiracy to violate plaintiff's constitutional rights. In addition, plaintiff alleged violations of her First, Fourth, Fifth and Fourteenth Amendment rights, each of which required research and analysis.  The court finds that the Nugget defendants have demonstrated that this case centered on unusual constitutional issues for the private defendants; therefore, the nature and difficulty of this case weigh in favor of the Nugget defendants.

(C)   <u>The skill requisite to perform the legal service properly and the experience,
reputation, and abilities of the attorneys – LR 54-16(3)(D) and (I)</u>

Counsel for Nugget defendants possess the requisite skills to provide the legal services required in a cost effective and efficient manner. Mr. Kent is a seasoned, experienced attorney with over twenty years of experience, Mr. Anderson has five years of experience as an associate, and Ms. Sawyer is an experienced paralegal. These factors weigh in favor of the Nugget defendants.

The court concludes that the attorney's fees are reasonable and the *Kerr* factors support that conclusion. Having found that sanctions are warranted against plaintiff and Mr. Crowley, the court turns to the degree of responsibility each bear for the filing and prosecution of this action. The court finds that Mr. Crowley's role as counsel weighs far more heavily than plaintiff's; therefore, the court apportions sanctions in the amount of $20,242.00 against plaintiff and Mr. Crowley as follows:

| | | |
|---|---|---|
| Plaintiff, Janelle Dietrich | $ 5,060.50 | (one-fourth share) |
| Martin Crowley, Esq. | $15,181.50 | (three-fourths share) |
| | $20,242.00 | Total |

These amounts are payable to Woodburn & Wedge and John Ascuaga's Nugget.

### III.   <u>Conclusion</u>

Based upon the foregoing, and for good cause appearing,

**IT IS ORDERED:**

1.   The Nugget defendants' motion for attorney's fees pursuant to 42 U.S.C. § 1988 against plaintiff (#55) is **GRANTED**;

2.   Pursuant to the court's inherent authority and 28 U.S.C. § 1927, Mr. Crowley is sanctioned;

3.   Pursuant to Fed.R.Civ.P. 54(d) and LR 54-16, the court finds that an award of attorney's fees in the amount of $20,242.00 is reasonable; and

4.   Having found that both plaintiff, Janelle Dietrich and her counsel, Martin Crowley, Esq., shall be sanctioned in this action, the court apportions payment

of attorney's fees to John Ascuaga's Nugget and Woodburn & Wedge jointly as follows:

| | | |
|---|---|---|
| Plaintiff, Janelle Dietrich | $ 5,060.50 | (one-fourth share) |
| Martin Crowley, Esq. | $15,181.50 | (three-fourths share) |
| | $20,242.00 | Total |

IT IS SO ORDERED.

August 6, 2007.

_____

UNITED STATES MAGISTRATE JUDGE

18